Good morning, Your Honors, and may it please the Court. My name is Justin Sweeney, and I represent the petitioner, Thomas Hernandez-Rios. And I'd like to reserve two minutes for rebuttal, if that's okay. Very good. The petitioner in this case hired an attorney who mistakenly believed that he was eligible for the proposed DAPA law despite a DUI conviction, which was disqualifying, and was served a statutorily defective notice to appear and put into removal proceedings. This same attorney, who could not correctly analyze the DAPA analysis, decided to then tackle removal defense for the very first time in her career and made several grave mistakes. It was, in fact, her first, last, and only removal case. The mistakes made here are not strategic decisions that reasonable attorneys could disagree on. As required by law, the petitioner put prior counsel on notice of the mistake and the ineffective assistance claim, and prior counsel admitted to these mistakes in a sworn affidavit, thus complying, not colluding, with the strict language of Lazada. Oh, sorry, Your Honor. Are you arguing ineffective assistance of counsel for just cancellation of removal or also for voluntary departure? I wasn't too clear. Your Honor, I would argue that it's both. There was also a prosecutorial discretion application suggested at a master hearing by the immigration judge. That would have effectively put the respondent out of removal proceedings altogether, and that was discussed at a master hearing in November of 2016 and then never followed up on either. I think the record is actually clear in this case that the ineffective assistance was throughout the proceeding, not just simply with regards to the cancellation application. Okay, well, focusing on cancellation for a minute, you know, under our case law, we excuse compliance with Lazada where the ineffective assistance is obvious on the face of the record, and there it seems like your client's prior counsel elicited some testimony from, you know, about psychological, emotional hardship on the children and medical issues. So, you know, just tell me how the ineffective assistance is sort of obvious on the face of the record. The first thing I would point the court to, Your Honor, is that the prior counsel showed up to the merits hearing, to the final hearing, attempting to prove hardship to the smaller daughter, Liz, in the lip condition without any corroborating evidence on the record. In fact, that first trial was continued to allow her the opportunity to attempt to gather evidence. The first mention of the hardship to Liz, the lip condition, was brought by the Department of Homeland Security attorney on cross-examination, the very attorney trying to deport the petitioner. Maria, the older daughter, was summarily ignored when asked on cross-examination whether there was emotional hardship. The petitioner, excuse me, answered yes, but then there was no corroborating evidence submitted after the fact and no follow-up on that line of questioning at all. This court's case law, as well as the BIA, allows for cumulative hardship. So if one particular family member doesn't quite rise to the level, but there's another family member that does, the immigration judge is allowed to consider the cumulative nature of the hardship. And when one of the qualifying relatives is completely ignored and there's no real corroborating evidence allowed to be presented on her behalf, that's ineffective assistance, and he was denied his fair day in court. Okay, how about for the voluntary departure? I mean, there, I don't, I'm not even sure that, was it Ohi? Is that the name of the prior counsel? I'm not sure that Ohi was even advised that there was going to be an ineffective assistance of counsel sort of claim related to voluntary departure. Just, can you put me to the part of the record where, you know, where she gets any notice that this is an issue? Specifically regarding the voluntary departure claim? Yes. I do not think that that is in the record, Your Honor. The notice given via the emails at record page 45 and her declaration at record page 52 is more focused on the cancellation. Okay. I do not believe that I brought up the voluntary departure issue specifically in the notice. Okay. Well, I thought you said a minute ago that you are nevertheless pursuing ineffective assistance of counsel as to both removal and voluntary departure. I'm arguing that the fact that it wasn't discussed beyond simply the immigration judge bringing up evidence as the ineffective assistance. This particular petitioner, his wife is also undocumented, and so he has no real hope now of immigrating back to the United States. His oldest U.S. citizen daughter is 13. He could potentially wait eight years, but he would have to win a very difficult I-212 waiver to get back in because of the removal order. So what are you saying? Are you saying that let's assume for the sake of argument we found that there was ineffective assistance of counsel for voluntary removal, voluntary departure, but not for removal. Are you saying, well, we don't want that relief because it's no good to us? No, I'm not suggesting that. That would provide him at least a path, an easier path to re-immigrate. My simple point, Your Honor, was that in analyzing the record and the totality of the record, the fact that it wasn't discussed proves that the petitioner was not provided that information so that he could make an informed decision for himself whether he wished to accept the voluntary departure order, wait in Mexico for 10 years and come back, or move forward on cancellation and risk a removal order. And I think the record is clear on that point, that he was not given the information by prior counsel to make that decision, an informed decision. All right. So cancellation and removal has a pretty high bar, and the BIA concluded there was no prejudice here. Would you address that? There was no prejudice. In other words, assuming ineffective assistance of counsel, there was no prejudice on the cancellation. I would argue simply that the BIA was incorrect if their conclusion was there was no prejudice. When one of the two qualifying relatives does not present testimony and is not followed up on regarding hardship, there was prejudice. We need both of them. This is not a strategic decision where you might decide to present evidence with regards to one of the kids and not the other. It's in removal proceedings. I'm not sure what you're saying here. You need to tell us even now what you could present to show that the decision was wrong because otherwise it's no harm, no foul. The current precedent and the decisions in this court require us to prove that it may have had an effect, and ignoring the emotional hardship to one of the two qualifying relatives may have had an effect regarding the immigration judge's final decision, which rested solely on hardship. He stated that the Department of Homeland Security agreed that there were no other issues. So you're no longer saying that there was nothing wrong with the judge's determination that there was no material harm to the other daughter because her lip problem was getting better as being treated? That is what the evidence in the record suggested. So it's all down to psychological harm to the other daughter? And the analysis of the cumulative harm as to both and his inability to present that evidence as to the other daughter, yes. So you're down to about a minute, 18. Do you want to reserve? I would like to reserve the remainder of my time. Thank you, Your Honor. Good morning, Your Honors. My name is David Schor. May it please the Court, I apologize. My name is David Schor. I represent the Attorney General of the United States. The petitioner in this matter, Mr. Hernandez-Rios, had a full and fair opportunity to present his cancellation of removal claim. The immigration judge denied it on hardship grounds. The Board affirmed that determination. The issue before the Court is whether the Board acted rationally within the permissible scope of its discretion in denying Mr. Hernandez-Rios' motion to remand alleging ineffective assistance of counsel, where he failed to show that counsel was, in fact, ineffective or comply with the matter of WSSADA requirements. Well, with respect to the voluntary departure, so I understand it, correct me if I'm wrong, counsel complied with two of the three factors but not the third one. Is that right? Yes. Yes, yes. And the third one was to report the attorney to the disciplinary authorities. Yes. And I'm looking at this Court's decision in Morales' Apollinar v. Mukasey 514F3893 in which we said, quote, we have been flexible in our application of the WSSADA requirements. The WSSADA factors are not rigidly applied, especially when their purpose is fully served by other means. Indeed, we seldom reject ineffective assistance of counsel claims solely on the basis of WSSADA deficiencies. So what about that? Well, certainly, and it is correct, where ineffective assistance of counsel is plain on the face, the Court has been flexible as to the application of the WSSADA requirements. And there have been cases where panels of this Court have excused the third compliance with the third WSSADA requirement when the ineffective assistance of counsel was clear or when counsel, the ineffective counsel, that is, essentially admitted it. That is, it would either be futile to pursue the complaint or the purpose of the complaint requirement has been otherwise satisfied. That is not the case here. So is there any evidence of collusion in the record here? Yes, Your Honor. Because he filed an affidavit? Well, I apologize. Perhaps not yes, but it's certainly amenable to that interpretation of collusion. I'd put it that way. You know, I've never understood the third WSSADA requirement. And let me tell you why. You know, we have thousands of habeas cases where ineffective assistance of counsel is raised. And we don't require those Petitioners to file with the State Disciplinary Board. And we analyze those, and the district courts do, on their face. They do it easily. Now, in the immigration context, the real problem with WSSADA, I mean, first of all, I'm not sure I've seen a case where the government really has alleged collusion. It seems to have come out of thin air. But here's the problem I have, that in State Disciplinary Boards, they're looking at not legal malpractice but ethical violations. The two are different. And most of these are just malpractice claims. So you're flooding the State Bars with what they consider frivolous complaints and asking them to investigate what would, on its face, be generally considered a frivolous pleading. And we're talking hundreds of thousands of cases here. So the State Bars aren't happy about this, let me just tell you that. And I've never understood the point of saying, well, we've got to prove that there's no collusion when, in fact, and then, of course, our cases are contrary. It says you don't need to do it when it's plain on its face. But then you're sending these ones that are ambiguous to the State Bars. So, to me, I've never understood the WSSADA requirements and what the point is. And I apologize because you didn't come here to defend WSSADA itself. The Court has deferred to the WSSADA requirements. But I would say this. The Board is, of course, inundated with ineffective assistance of counsel motions to reopen, just as State Bars are inundated with complaints. But I would also say that here, for example, the ethical violation would be accepting representation. This is just one possibility that the attorney is not qualified to do. So, one purpose of the WSSADA requirements. Is this court explained to that same case? Your adversary mentioned this was the first case. Every attorney is always going to have a first case doing something a little bit different. I mean, that can't be a per se ground of ineffective assistance of counsel. Certainly. And there was no showing of error in this case. But before I get to that, I do just want to talk about the bar complaint requirement here and why, in this case, it's perhaps more salient than in one where there is ineffective assistance that's plain on the face. So, WSSADA is supposed to provide this framework for assessing the bona fides of an ineffective assistance of counsel claim, discourage meritless claims, and to hold attorneys accountable. So, the bar complaint requirement. Accountable for what, though? I mean, I don't see an ethical violation here. Well, the alleged ethical violation, perhaps it could be. Perhaps. And, you know, the plain on his face would say, well, we can resolve this. But you're sending all these ambiguous malpractice claims to bar associations, which is impeding their ability to do their real work. That's what they tell me. I can't really speak to that, Your Honor. I can speak to. I'm looking at another Ninth Circuit case, Correa Rivera v. Holder, 706 F. 3rd, 1128. And there, this court said that the third requirement was, quote, irrational and arbitrary, even bizarre. Pretty strong language. Certainly. Now, of course, the issue in that case was that there was the board found that there was not sufficient corroboration that a complaint had been filed. And so the issue was not the validity of the requirement. But so the purpose of the requirement, such as it is, is basically to tell the movement, if you're claiming that your attorney, that the performance was so egregious, that your proceedings were constitutionally defective and rendered fundamentally unfair, then you have to put your money where your mouth is. But we don't do that in habeas, and we do just fine in analyzing those claims. I think what the board is doing is offloading their assessment of these claims to the state bar. Also, it puts the client in it. For example, there was evidence here that the counsel, the original counsel, was a, quote, nice person. You know, it seems to me perfectly understandable that even someone who felt that their counsel had not done the right job for them would hesitate to refer that person to a disciplinary organization, putting the person's whole livelihood in jeopardy. Well, if that excuse is valid, Your Honor, then the requirement is a nullity. Now, in this case. That's true. And that seems not totally irrational or bizarre to me. The current counsel, Mr. Sweeney, drafted the affidavit for prior counsel. And that's at page 48 of the record. Right. So what's wrong with that? And he sent an e-mail to her saying, please sign this affidavit, edit it, and sign it. Oh, and we're not going to be filing a, you know, sign this only after I'm now advising you we're not pursuing a complaint, thus creating an incentive for her to say she stops just short of admitting negligence but say, oh, yeah, I was out of my debt. Happens all the time in habeas. I mean, I guess what I wonder if you are, are you arguing collusion then? Well, the purpose of this requirement is to prevent collusion, collusive use of the ineffective assistance of counsel claims to pursue, you know, reopening where all can. The most that happens is so the person gets a second bite at the apple. Yes, that is imposes additional work on the, you know, the immigration authorities. But on the other hand, it is a further assurance that the reality of the situation will finally be grappled with. So if it is a loophole, why is it not on balance a reasonable loophole? I see my time is up, Your Honor, if I may answer. Because it creates an incentive to essentially agree that, yes, remand is warranted, where imagine if the same prior counsel was responding to a bar complaint. Would we have had this admission? Oh, I, you know, I was out of my debt. In that case, she would be zealously advocating for herself and saying no. But all this is based on supposition. I mean, I looked last night because I was curious on how many immigration cases I'd actually sat on. It was more than 4,000. And I've never seen a credible allegation of actual collusion. And I look back at Lozada and I don't see any empirical proof that this collusion is so widespread that it necessitated that requirement. Of course, it's not our place to second guess the board's. Of course, anyone who sat on 4,000 such cases may have suffered psychological harm. But let me ask you this. I understand that the board itself has disciplinary powers, correct? I believe so, yes. So, you know, why isn't the board just saying file the complaint with us? Let's not burden the state bar. Perhaps the board could do so, Your Honor. I don't, I'm not sort of. But there seems to be the suspicion that if you get an affidavit from your prior attorney, that the affidavit is false because that's, you say, that's collusion  And to me, most ineffective assistance cases can be analyzed on their face without further ado, particularly when it's not plain on its face. So I've never understood it. I know that my time is up. Yes, no, please. I want to hear your answer. Oh, I'm sorry. I'm certainly not in a position to sort of tell the board how it suggests a better way. And there could very well be other ways. The agency under the Supreme Court precedent, Vermont Yankee, can sort of decide on its own procedures. And this court has deferred to the matter of Lizada requirements. Yeah, we have. I'm not sure wisely. But, I mean, then it forces us to analyze in every case. So it's a colossal waste of our time and the state bar's time when I think the board could simply analyze it on its face. That's just my view. But in this case, you have an affidavit. So what's wrong with that? Well, the affidavit is, you know, drafted by current counsel, sent, no complaint will be filed against you, please sign this affidavit, which helps our case. I mean, that raises concerns of collusion. That all can sort of agree that, yes, remand is necessary in this case. But, of course, unlike the other cases in this Court where they've, you know, waived application or excused compliance, that is, with Step 3, the bar complaint requirement, where there was actually an admission of negligence. Here we don't have that. And here we likewise don't have ineffective assistance plain on the face of the record. And I do want to just point out very quickly, contrary to counsel's assertion, that prior counsel didn't follow up on hardship. She said, will there be emotional hardship? The answer was yes. And then her next question was, how so? Mr. Hernandez-Rios said nothing about, you know, emotional troubles, difficulties of any of his daughters. And there's no reason to think that he was any more forthcoming with her when he wasn't sitting before an immigration judge, where according to her affidavit that current counsel drafted, she acknowledges that they did discuss the issue. And I just, very briefly, if I may, I realize I'm out of time. As to voluntary departure, now there is no claim of error that's been perfected. The claim is prior counsel did not fully inform me of the voluntary departure requirements and benefits of that privilege. Nowhere does he suggest, oh, and I might even be interested in pursuing that, or I might have been interested in pursuing that. So that allegation of error was never perfected. As for the lip issue, he stated, Mr. Hernandez-Rios, in his own affidavit, I neglected to tell prior counsel about it. That's at page 184 of the record. She stated to the immigration judge, he described it to me as a cold sore. And then, of course, she presented this voluminous medical documents about the lip issue, which show that it's, quote, unquote, almost gone. So any error or failure to present evidence lies with Mr. Hernandez-Rios and not counsel. And I just do want to correct one final thing, and I do apologize for going on past my time. The board found that there was no error, that is, there was no ineffective assistance. So there was necessarily no prejudice. The board did not make a separate, independent sort of prejudice determination. So for all these reasons, the court should deny the petition. Thank you, counsel. Thank you, Your Honors. Your rebuttal. We'll give you two minutes. Thank you, Your Honors. I would just like to go through the language. It's been mentioned that the Lozada requirement, the third prong, it's actually not a requirement. The language there is not shall or must. It says that we should reflect whether a complaint has been filed with the appropriate disciplinary authorities, and if not, why not? It leaves open the caveat that one might not be filed. And in the case of respondents in removal proceedings, an already very vulnerable group of people who have limited resources, the petitioner's concern was not, let me go report my other attorney to the state bar. His primary focus was, how can I seek appeal and have another fair day in court? And I think that that's… It would be helpful if you could just spend a minute addressing the government's argument that you don't have any perfected claim of ineffective assistance of counsel with regard to voluntary departure. If you could just address that for a moment. The claim regarding voluntary departure, Your Honor, is the record is not clear. Again, my email did not ask to address the voluntary departure issue specifically. However, the argument, the petitioner's argument is simply that voluntary departure is a potential option in a case like this, as was the prosecutorial discretion application, which would have been even better. The respondent, the petitioner, excuse me, is not in a position, he's not an attorney. He can't analyze why or how or when he should or not take this. And the idea that an attorney who shows up to a merits hearing without evidence of hardship, who analyzes DAPA incorrectly to try and retain this first client ever, can correctly advise the petitioner regarding his voluntary departure benefits, the record is not clear that it was explained to him. And so that is our argument that it's not perfected. So how do you respond to the BIA's conclusion? Let me just quote it. The respondent nowhere asserts that but for better advocacy from his attorney, he would have requested voluntary departure and actually voluntarily departed the United States. And then after language finally, the respondent acknowledges that he indicated to his former counsel that he did not wish to depart the United States voluntarily. Yeah, that is one of the bad facts in our case, admittedly. I was going to bring that up right now. How do you get over that? Leaving aside the Lozada requirements. I asked voluntary departure. With respect to voluntary departure specifically? Yeah. The argument is that the petitioner, again, if asked in the record in court, it was regarding do you want to go back to a country you haven't lived in in 20 years. And I think if you asked most immigrants that question, they would say no. And so the back and forth between having litigated and requested voluntary departure on occasions, the client has to be incredibly prepared to go from arguing for hours that they don't want to leave the country and want to stay here to shift over under the voluntary departure qualification, which did not happen on the record with the immigration judge when the respondent's counsel is supposed to qualify and ask. And then they have to pivot and say are you willing to depart to your country? And the client, the respondent needs to say yes after saying no, no, no for hours. The fact that that didn't happen is evidence that the client was not properly informed. That is my argument. I apologize for going. Oh, no, no. You answered my question. Any further questions from the panel? Yes, thank you. Thank you both for your arguments this morning. The case just argued will be submitted for decision. Thank you.
judges: THOMAS, THOMAS, Rakoff